UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

JACK McCOOL,

Plaintiff,

v.

OPERATIVE PLASTERERS' & CEMENT MASONS' INT'L ASS'N OF THE UNITED STATES & CANADA, AFL-CIO,

Defendant.

Case. No. 13-13614

Honorable Patrick J. Duggan
Mag. Judge Laurie J. Michelson

_______________________________________/

**ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER [17] AND MOTION TO DISQUALIFY COUNSEL [31]**

This is an employment discrimination case. Plaintiff Jack McCool ("Plaintiff") formerly worked for local affiliates of Defendant Operative Plasterers and Cement Masons International Association of the United States and Canada, AFL-CIO ("Defendant" or "Union"). He alleges that he was demoted and ultimately terminated from his position due to his age. Prior to his termination, Plaintiff spoke with a lawyer for the Union's local affiliate. Plaintiff advised the lawyer that he was going to be replaced with someone younger who "would last longer" and that he was considering filing a lawsuit. Plaintiff did sue, and the lawyer's law firm, Miller Cohen, PLC ("Miller Cohen"), appeared as local counsel for Defendant. Four months later, and only after the parties encountered difficulties in scheduling depositions and filed discovery motions against one other, Plaintiff moved to preclude Miller Cohen from participating in his deposition (Dkt. 17) and, further, to disqualify the firm on the basis of a conflict of interest (Dkt. 31). These two motions were referred to this Court for hearing and determination. (Dkts. 18, 32.) The Court conducted oral argument and heard

testimony from Plaintiff on February 12, 2014.[1] For the reasons set forth below, the motions are **DENIED**.

## I. BACKGROUND

On March 5, 2001, Plaintiff was hired by Defendant as a Business Agent for its affiliated Local 67. (Dkt. 1, Compl., ¶ 5.) Plaintiff was subsequently promoted to Business Manager. (*Id*.) In the summer of 2012, Local 67 merged with Defendant's affiliated Local 514. At that time, Plaintiff was 59 years old. On June 27, 2012, Plaintiff was allegedly advised by Defendant's Vice President, Dan Rauch, that a younger, less experienced individual (Joel Santos) would become the Business Manager of the merged entity effective November 1, 2012. (*Id*. at ¶¶ 6, 7.) According to Plaintiff, Rauch believed Plaintiff was too old for the job and wanted to replace him with someone younger who "would last longer." (*Id*. at ¶¶ 7, 9; Mot. to Disqualify at 4-5.)

Plaintiff contends that, following his discussion with Rauch, he immediately contacted labor lawyer Robert Fetter ("Fetter"), a partner with the Michigan law firm of Miller Cohen. The law firm is counsel to the Union's affiliated Local 514 and also represented Local 67 prior to the merger.

Plaintiff testified that, in his capacity as Business Manager for Local 67, he had occasion to interact with Fetter. The two also went golfing and had other interactions. Thus, Plaintiff expressed that he had a "relationship" with Fetter. Plaintiff further testified, however, that he was aware Fetter was counsel for Local 67 and that he never thought Fetter was his personal lawyer. During a short telephone call, Plaintiff informed Fetter about Rauch's statements and advised Fetter that he was

[1] The Court's Notice of Hearing advised the parties that "[t]he Court is prepared to conduct an evidentiary hearing on the Motion to Disqualify Counsel if that is how the parties wish to proceed." (Dkt. 33.) Mr. McCool was the only witness presented. At the hearing, Defendant requested a continuance because they did not bring Mr. Fetter to testify. The request was denied.

thinking about filing a lawsuit against the Union. Plaintiff does not know what Fetter did with the information, but believes it is"reasonable to assume Fetter told Rauch and other members of Miller Cohen . . . ." (Dkt. 31, Pl. Mot. to Disqualify at 4.)

A few months later, on October 25, 2012, Mr. Eric Frankie, Plaintiff's counsel in this matter, sent a letter to Rauch and Union President Patrick Finley that stated, "Please be advised that I represent Mr. Jack McCool concerning his age discrimination claims against your Union. For your ease of reference, I have enclosed herewith, a copy of Mr. McCool's [October 16, 2012] EEOC charge of discrimination. By this letter, I am notifying you and your union that no further actions of discrimination should be taken against Mr. McCool." (Dkt. 35, Pl. Resp. to Mot. to Compel, Ex. A.)

On November 1, 2012, Plaintiff was demoted from Business Manager to Business Agent for the merged Local 514. (Dkt. 1, Compl. at ¶¶ 5, 6, 12.) Plaintiff was ultimately terminated on July 22, 2013. (Id. at ¶13.) He brought this age discrimination lawsuit on August 21, 2013. The Complaint discloses the information that Plaintiff discussed with Fetter – i.e., that, according to Rauch, Plaintiff was not going to be the Business Manager of the post-merger Local 514 "because of his age and because he was too old, or words to that effect." (Dkt. 1, Compl. at ¶ 9.) The Union answered the complaint on September 23, 2013. (Dkt. 5.) The Union is represented by Fetter's partner, Mr. Richard Mack of Miller Cohen, as well as a firm in Washington D.C.

Defendant acknowledges that Plaintiff and Fetter had two communications regarding the subject matter of this litigation. As explained by Defendant in its December 2013 interrogatory answers:

> a. The first communication occurred around the time of the merger of Local 67 and Local 16 into Local 514. Plaintiff mentioned that the

> merger was going to take place and Plaintiff further stated that Vice President Daniel Rauch stated that Plaintiff would not be the [B]usiness [M]anager. Plaintiff also stated that Vice President Rauch told the Plaintiff that Joel Santos would be the Business Manager because he would be around longer. McCool indicated that he believed that age may have been a factor. Fetter replied that he was not getting involved in the matter.
>
> b. The second communication took place a month or two ago [October or November 2013]. Plaintiff called Fetter and asked if they were still friends. Plaintiff further asked how Fetter's law firm could be representing "Danny," i.e., Vice President Daniel Rauch. Fetter responded that his firm represents the Local Union, i.e., Local 514. Plaintiff stated to Fetter something to the effect of "I talked to you about this" and Fetter replied that is why he is not handling the matter. Fetter then told McCool that he could not talk about the matter.

(Dkt. 11, Def. Mot. to Quash at 4, Ex. J.)

The parties conducted their Rule 16 Scheduling Conference on October 8, 2013, and Plaintiff did not raise any conflict of interest issue based upon Miller Cohen's (September 23, 2013) appearance and representation of the Union. The parties then began discovery. After initiating written discovery, they encountered difficulties in scheduling depositions. This resulted in Defendant's Motion to Quash and for Protective Order seeking to preclude Plaintiff from taking certain depositions of Defendant's representatives that he had noticed (Dkt. 11), and Plaintiff's Motion to Compel, which sought to compel those depositions (Dkt. 13). On January 5, 2014, Plaintiff's counsel wrote to Defendant's counsel that "in preparing Plaintiff's response to Defendant's Motion to Quash and for Protective Order, it has become clear to me that Miller Cohen PLC has a conflict of interest under the [Michigan Rules of Professional Conduct] and should be disqualified from representing Defendant in this case." (Mot. to Disqualify at 7, Ex. A.) As a result, Plaintiff's counsel did not think it was appropriate for his client to be deposed by any lawyer from

Miller Cohen. He initially filed a Motion for Protective Order to preclude Miller Cohen from participating in his deposition on the sole ground that they have a conflict of interest under several provisions of the Michigan Rules of Professional Conduct ("MRPC") and then filed a Motion to Disqualify asserting the same reasons. (Dkts. 17, 31.)[2]

On the same day that Plaintiff filed the Motion to Disqualify, January 23, 2014, he also submitted the following complaint to the Attorney Grievance Commission:

> My name is Jack McCool . . . . I have a pending discrimination suit that was filed on August 21, 2013 against the Operative Plasterers and Cement Masons International Association (OPCMIA) in the U.S. District Court for [the] Eastern District of Michigan . . . .
>
> I was the Business Manager of OPCMIA Local 67 and Business Agent of Local 514 of this organization.
>
> The defendant of this case has hired the law firm of Miller/Cohen 600 W. Lafayette Blvd 4th floor Detroit, Michigan 48226. Which I had a business relationship with this firm for over 10 years as the senior officer of Local 67, and had direct contact with senior partner Bruce Miller and attorney Robert Fetter of this firm.
>
> I had a conversation about this case with Robert Fetter before Miller/Cohen was hired by the defendant and I think that conversation is being discussed with the defendant and other attorneys from this firm, therefore I think this a conflict of interest

[2] Courts have disallowed disqualification on the basis of waiver or estoppel where the moving party has failed to move for disqualification in a timely manner. *In re Valley-Vulcan Mold Co.*, 237 B.R. at 337 ("It is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." (citing *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) (denying motion for disqualification where it was asserted just prior to the scheduled trial date))). Here, because of the parties' discovery disputes, they have not yet conducted any depositions, no dispositive motions have been filed, and the Court has granted Defendant's motion to extend the scheduling order. Thus, while Plaintiff certainly could have raised the disqualification issue sooner, the court cannot say it is untimely given the current posture of the case.

and this law firm should not be a part of this case.

(Mot. to Disqualify, Ex. C.)

Miller Cohen contends that there is no conflict of interest because Fetter, as attorney for Local 67, did not have an attorney-client relationship with Plaintiff and because Plaintiff did not reveal any confidences to Fetter. (Dkts. 30, 36, Def. Resp.)[3]

## II. ANALYSIS

### A. Legal Standard

A motion to disqualify counsel is the proper method for a party to bring to the court's attention an alleged conflict of interest or breach of ethical duty by opposing counsel. *See DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003) (citing *Musicus v. Westinghouse Elec. Corp.*, 621 F.2d 742 (5th Cir. 1980)). The court, however, must be vigilant in reviewing such a motion, as the "ability to deny one's opponent the services of capable counsel is a potent weapon." *Manning v. Waring, Cox, James, Sklar & Allen*, 849 F.2d 222, 224 (6th Cir. 1988). Indeed, "[m]otions to disqualify are viewed with disfavor and disqualification is considered a drastic measure which courts should hesitate to impose except when absolutely necessary." *Valley-Vulcan Mold Co. v. Ampco-Pittsburgh Corp.*, 237 B.R. 322, 337 (B.A.P. 6th Cir. 1999), *aff'd*, 5 F. App'x 396 (6th Cir. 2001) (citation and internal quotation marks omitted). The court must balance the interest of the court and the public in upholding the integrity of the legal profession against the right of a party to retain counsel of its choice. *Manning*, 849 F.2d at 225. A party seeking disqualification carries a heavy burden and must meet a high standard of proof. *Valley-Vulcan*, 237

[3] Because of the overlap in the motions, the Court indicated that it would treat Defendant's Response to the Motion for Protective Order as its Response to the Motion to Disqualify. (Dkt. 32.)

B.R. at 337, (citation omitted); *see also MJK Family LLC v. Corporate Eagle Mgmt. Servs.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009) ("The movant bears the burden of proving that opposing counsel should be disqualified."). A court should only disqualify an attorney "when there is a reasonable possibility that some specifically identifiable impropriety actually occurred." *Moses v. Sterling Commerce (America) Inc.*, 122 F. App'x 177, 184 (6th Cir. 2005) (citations omitted).

A state's ethics rules are appropriate standards against which to measure the propriety of an attorney's conduct for the purpose of determining whether he or she should be disqualified. *Nat'lUnion Fire Ins. Co. of Pittsburgh, Pennsylvania v. Alticor, Inc.*, 466 F.3d 456, 457-58 (6th Cir. 2006), *vacated on other grounds*, 472 F.3d 436 (6th Cir. 2007); *see also Nissan N. Am., Inc. v. Johnson Elec. N. Am., Inc.*, No. 09-11783, 2011 U.S. Dist. LEXIS 51115, at *18 (E.D. Mich. May 12, 2011) ("In finding that a 'reasonable probability' exists that some "specifically identifiable impropriety" occurred, it is appropriate for this Court to look to the applicable rules of professional conduct."). The "Rules of Professional Conduct adopted by the Michigan Supreme Court . . . apply to members of the bar of this court and attorneys who practice in this court." E.D. Mich. L.R 83.22.

Here, Plaintiff relies upon the following Michigan Rules of Professional Conduct to support his motions:

> Rule 1.7 Conflict of Interest: General Rule
>
> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.
>
> Rule 1.8 Conflict of Interest: Prohibited Transactions

> (b) A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation, except as permitted or required by Rule 1.6 or Rule 3.3.
>
> Rule 1.9 Conflict of Interest: Former Client
>
> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.
>
> (b) Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client
>
> (1) whose interests are materially adverse to that person, and
>
> (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.
>
> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.
>
> MRPC 1.10 Imputed Disqualification: General Rule
>
> (a) While lawyers are associated in a firm none of them shall knowingly represent a client when anyone of them practicing alone would be prohibited from doing so by Rule[] . . . 1.9(a).

(Mot. to Disqualify at 5-6.) Plaintiff contends that "[w]hile it is not fully known at the present time how these rules are implicated by Fetter and Miller Cohen's conduct, it is clear that Miller Cohen

P.LC should not be representing Defendant in the claims brought by Plaintiff because Fetter, due to Plaintiff's consultation with him about Defendant's discriminatory behavior and the actions he should take, individually could not represent Defendant in this case." (*Id*. at 6.)

At oral argument, Plaintiff continued to argue that McCool was a "former client" of Fetter, thereby precluding Fetter's law firm from representing Defendant in this matter. As to former clients, the Sixth Circuit applies the following three-part test for attorney disqualification: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of that relationship is substantially related to the subject matter of the present case; and (3) the attorney acquired confidential information from the party seeking disqualification. *Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 889 (6th Cir. 1990). At issue here are the first and third prongs of the *Dana* test.[4]

**B. Disqualification is Not Warranted**

As the senior officer (Business Manager) of Local 67, Plaintiff had a business relationship with Local 67's law firm, Miller Cohen, and he had direct contact with senior partner Bruce Miller as well as attorney Fetter. (Mot. to Disqualify, Ex. C, Grievance Compl.) With knowledge of this relationship, Plaintiff called Fetter after his June 2012 meeting with Rauch. The discussion lasted approximately four (4) minutes. Plaintiff clearly knew Fetter was counsel for Local 67. Indeed, Plaintiff testified that he never thought Fetter was his personal lawyer and was not going to ask

[4] At the hearing, Plaintiff's counsel argued that the only issue in determining disqualification is whether Plaintiff expected Fetter to keep the disclosed information confidential. This is not a correct recitation of the law. Michigan Rule of Professional Conduct 1.6, which is Plaintiff's primary support, defines "confidence" as "information protected by the client-lawyer privilege under applicable law" and states that "a lawyer shall not knowingly reveal a confidence or secret of a client" or "use a confidence or secret of a client to the disadvantage of the client." MRPC 1.6(a), (b)(1) and (2). In other words, Rule 1.6 applies only where a lawyer-client relationship exists.

Fetter to represent him. Plaintiff further testified that he was just looking for some insight. Plaintiff testified that he advised Fetter that he was going to be demoted because of his age and that he was thinking about filing a lawsuit. According to Plaintiff, Fetter told him that litigation was a long, hard road. Recognizing that Fetter represented Local 67 (and not wanting to involve him in a conflict of interest), Plaintiff says he told Fetter, "I won't involve you in this," and Fetter said, "thank you." According to Defendant's interrogatory response, Fetter simply told Plaintiff he was not getting involved.

Of course, Plaintiff's relationship with Fetter in Plaintiff's capacity as a representative of Local 67 was not personal to Plaintiff and therefore cannot create a conflict of interest. Thus, the dispositive question is whether, through their four-minute conversation where Plaintiff recounted what Rauch had said, Plaintiff formed a personal attorney-client relationship with Fetter.

Unfortunately, there does not appear to be a definitive test for when a preliminary consultation creates an attorney-client relationship. Defendant relies on a Michigan ethics opinion that analyzed a somewhat analogous situation. In Mich. Bar Ass'n, Ethics Op. No. RI-154 (Feb. 1, 1993), a lawyer had been approached by a company to pursue the recovery of money from a former employee pursuant to a tax reimbursement policy. Three years earlier, however, the former employee had been referred to another lawyer at the same law firm. The former employee had a half-hour conversation with this lawyer about the tax reimbursement issue. The former employee told the lawyer that the company had asserted a claim against him and that he disagreed with the claim. The lawyer responded that the issues were involved and complex and required a more detailed development of the facts. The two discussed the costs, fees, and other terms of the law firm's potential representation, but the former employee decided not to retain the law firm. In analyzing

Rule 1.10, the ethics opinion advised that

> no client-lawyer relationship was established in connection with the lawyer colleague's bar association referral contact with the former employee. No agreement was reached between the lawyer colleague and the former employee whereby the lawyer colleague expressly undertook to provide legal services to the former employee on the tax reimbursement issue. Nor was the content of the consultation sufficiently specific to imply a client-lawyer relationship[.] While the subject of a tax reimbursement claim was raised, in a very general manner, there was no legal advice imparted to the former employee regarding the tax reimbursement issue; instead, the former employee was told that no advice could be provided without further information and study.

(*Id*.) The advisory opinion further concluded that "the law firm's adherence to its duties under MRPC 1.6 and 1.9(c) would not have any impact on the law firm's representation of the company on the tax reimbursement issue." (*Id*.)

*MJK Family LLC v. Corporate Eagle Mgmt. Servs.*, 676 F. Supp. 2d 584 (E.D. Mich. 2009), provides another possibly-applicable test for determining the existence of an attorney-client relationship in this case. There, District Judge John Feikens analyzed whether, as a result of their consultation with the corporation's lawyer, individual members of a corporate entity had established an independent attorney-client relationship with the corporation's law firm. Judge Feikens found instructive the law governing claims of attorney-client privilege asserted by corporate employees. He reasoned, "Generally, there is no individual attorney-client privilege between a corporation's attorney and an individual within the corporation unless there is a clear showing that he consulted the corporate counsel in his individual capacity." (*Id.* at 594); *see also* MRPC 1.13 (providing that "[a] lawyer employed or retained to represent an organization represents the organization as distinct from its directors, officers, employees, members, shareholders, or other constituents."). He then identified the following factors that should be considered in making that determination:

1. Whether the employee approached counsel for the purpose of seeking legal advice;

2. When he approached counsel, did he make it clear that he was seeking legal advice in his individual rather than representative capacity;

3. Counsel saw fit to communicate with him in his individual capacity, knowing that a possible conflict could arise;

4. His conversations with counsel were confidential; and

5. The substance of the conversations with counsel did not concern matters within the company or the general affairs of the company.

*Id.* (citing *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 123 (3d Cir. 1986); *Ross v. City of Memphis*, 423 F.3d 596, 605 (6th Cir. 2005)); *see also Ross*, 423 F.3d at 605 (recognizing that the *Bevill* test, which "has been adopted by many circuits," requires an individual to show that he "made it clear" that he was seeking individual advice).

Additionally, the Sixth Circuit recognizes that "[w]hen a potential client consults with an attorney, the consultation establishes a relationship akin to that of an attorney and existing client." *Banner v. City of Flint*, 99 F. App'x 29, 36 (6th Cir. 2004). Thus, federal district courts in Michigan have found that a "motion to disqualify an attorney who has met with, but was not retained by, a prospective client 'should be analyzed the same as a motion to disqualify pursuant to a former client relationship, with the additional requirement that the lawyer receive information that could be 'significantly harmful,' rather than merely confidential as required by the Sixth Circuit's three-prong *Dana Corp*. test." *Eaton v. Meathe*, No. 11-178, 2011 U.S. Dist. LEXIS 135838, at *7-8 (W.D. Mich. Nov. 27, 2011) (citing *Factory Mut. Ins. Co. v. APComPower, Inc.*, 662 F. Supp. 2d 896, 900

(W.D. Mich. 2009)).[5]

The Court finds that, utilizing any of these tests, Plaintiff has failed to demonstrate a disqualifying conflict of interest on the part of Miller Cohen. Plaintiff acknowledges that Fetter was counsel for Local 67 and that he contacted Fetter in that capacity. This resulted in one short phone conversation. They did not discuss any terms of individual representation, no legal advice was given, and there was no agreement Fetter would render legal services to Plaintiff. Indeed, Plaintiff did not believe Fetter was his personal counsel. Plaintiff told Fetter he was not going to involve him and Fetter agreed that he was not getting involved. Plaintiff subsequently retained Mr. Frankie who sent a letter to the Union disclosing the EEOC charge and ultimately filed this lawsuit. There is simply no objective manifestation of an attorney-client relationship between Plaintiff and Fetter.

Additionally, Plaintiff has not established that Fetter has revealed any confidential information from their conversation or, even assuming otherwise, that the disclosures have been or

---

[5] This is based upon Model Rule of Professional Conduct 1.18 which has not yet been adopted in Michigan. That Rule provides, in part:

> (a) A person who discusses with a lawyer the possibility of forming a client-lawyer relationship with respect to a matter is a prospective client.
>
> (b) Even when no client-lawyer relationship ensues, a lawyer who has had discussions with a prospective client shall not use or reveal information learned in the consultation, except as Rule 1.9 would permit with respect to information of a former client.
>
> (c) A lawyer subject to paragraph (b) shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter if the lawyer received information from the prospective client that could be significantly harmful to that person in the matter, except as provided in paragraph (d) . . . .

ABA Mod. Rules Prof. Cond. Rule 1.18.

will be "significantly harmful" to Plaintiff. *See Eaton*, 2011 U.S. Dist. LEXIS 135838 at *10-11(explaining that "[t]he third *Dana* test asks whether the attorney acquired confidential information from the party seeking disqualification" and where the party seeking disqualification is "only asserting that he consulted with, not that he retained" the opposing lawyer, "the Court must also consider whether any information [Defendant] received could be 'significantly harmful' to [Plaintiff]."). Plaintiff testified that the confidential information he disclosed to Fetter includes the alleged statements by Rauch that Plaintiff was going to be replaced as the Business Manager because Mr. Santos would be around longer (i.e., because of his age), and that Plaintiff was thinking of filing a lawsuit. Rauch's statements are not confidential information. Rauch, as a Union officer, was certainly free to share this information with Fetter, counsel for the Union's local affiliate. Within days of Plaintiff filing an EEOC complaint, his lawyer sent a copy directly to Defendant. That complaint, and the Complaint that was ultimately filed in this lawsuit, disclose the very information that Plaintiff conveyed during his conversation with Fetter. Moreover, counsel for the Union represented that Fetter did not disclose to the Union any of the content of his communication with Plaintiff. They have further represented that any inability to use this information has not materially impacted their representation of the Union, especially since the information all became public in the litigation.

Because it appears that no attorney-client relationship was created and the information disclosed was not confidential, and because Plaintiff has not identified how the disclosures that occurred might significantly harm him in this litigation, the Court finds that, on the present record, Plaintiff has not met his burden of showing that there is a "reasonable possibility that some specifically identifiable impropriety actually occurred." *Moses*, 122 F. App'x at 184; *see also Eaton*,

2011 U.S. Dist. LEXIS 135838 at *13.

Plaintiff's arguments do not alter the Court's conclusion. According to Plaintiff, Defendant admitted the existence of an attorney-client relationship between Fetter and Plaintiff in one of its interrogatory responses. (Mot. to Disqualify at 8.) In particular, Defendant objected to the interrogatory "on the grounds that it is not tailored to lead to the discovery of admissible evidence. Mr. Fetter is a partner in the law firm of opposing counsel. Further, Mr. Fetter cannot disclose any attorney-client privileged communication, and objects to the extent the question involves legal advice from Mr. Fetter to Mr. McCool, Defendant will keep the information confidential and will not broadcast it further." (*Id*.)

Defendant counters that Plaintiff is misreading its response. Defendant explains that in objecting to the disclosure of attorney-client privileged communications, it was not referring to legal advice Fetter gave to Plaintiff for his personal legal issues – because there was none. (Resp. at 13.) Instead, it was referring to the disclosure of communications from Fetter to Local 67. (*Id*.) As Business Manager, Plaintiff was the principal officer of Local 67. Thus, if Fetter provided legal advice about the merger of the local unions to Plaintiff, that would have been advice to the local union.

Defendant's interrogatory objection is suspect, but it does not create an attorney-client relationship. Plaintiff's Interrogatory No. 20 asked for the substance of any communication between Plaintiff and Fetter regarding Plaintiff's claims of age discrimination. It had nothing to do with legal advice to the local union about the merger. However, the fact that Defendant interposed an unwarranted objection, an all-too-common occurrence in discovery responses, cannot create an attorney-client relationship between Fetter and Plaintiff (in his individual capacity). And here,

Plaintiff's testimony makes clear that there was no such relationship.

Plaintiff also contends that this case is indistinguishable from *DeBiasi v. Charter County of Wayne*, 284 F. Supp.2d 760 (E.D. Mich. 2003), in which the plaintiff's counsel was found to have a disqualifying conflict of interest. The Court disagrees. In *DeBiasi*, the plaintiff was a white male lieutenant who claimed reverse discrimination when the defendant county promoted a black female lieutenant, Pamela McClain, over him. The plaintiff believed that McClain should not have received the promotion. The potential conflict arose because the plaintiff's counsel was also general counsel to the union that both the plaintiff and McClain were members of. In that role, the plaintiff's counsel had served as McClain's union representative and had thereby obtained information about her fitness for the promotion that the plaintiff could use against the defendant county. In issuing an advisory opinion as to the lawyer's potential conflict of interest, the State Bar stated:

> Even though the labor union [and not individual union member McClain] is and was your client, it is possible that you could have received some confidential communications from an agent of your client . . . during your representation as general counsel during labor negotiations.
>
> * * *
>
> Therefore, the test is whether or not you obtained any privileged and confidential information from the agent of your client during a former representation that could be used against her in this matter. If the answer is "yes", the conflict of interest rules could prevent your current representation. If the answer is "no", the ethics rules would permit your current representation.

*Id*. at 762. The court adopted this test and found "Plaintiff's counsel's knowledge of matters confided to him in the course of his service as general counsel for the Union -- particularly with regard to the qualifications of Pamela McClain . . . -- are central to the defense of this case." *Id*. at 771. Significantly, the Court found that the conflict of interest rules prevented the attorney's *concurrent* representation of the plaintiff and the local union. Indeed, the court noted that "when an

attorney concurrently represents two clients with adverse positions, impropriety is presumed." *Id.* at 771 n.8.

This case is not like *DeBiasi*. First, Fetter's position is different from the plaintiff's counsel in *DeBiasi*. This is not a case of concurrent representation. As discussed, Fetter has never represented McCool individually. Second, unlike the information that the plaintiff's counsel in *DeBiasi* obtained about McClain, Plaintiff has not adequately demonstrated that the information he disclosed to Fetter was not otherwise available to Defendant. Plaintiff arguably made public the fact that he was thinking of filing a lawsuit when he filed the EEOC charge or when his lawyer sent the letter to the Union. At a minimum he made it public when he filed this suit. Plaintiff offers no explanation for how his intent to file a lawsuit against the Union was used or is now being used against him in this litigation. Likewise, Plaintiff does not explain how disqualifying Miller Cohen at this point in the litigation would prevent any harm to his case.

In sum, Plaintiff falls short of meeting the demanding standard for disqualification. He has failed to establish the requirements of the *Dana* test or a violation of the similar requirements set forth in MRPC 1.7, 1.8, 1.9, or 1.10.

**B. MRPC 3.7 Does Not Require Disqualification**

Lastly, Plaintiff contends that "MRPC 3.7(a) mandates that Fetter and Miller Cohen PLC not act as attorneys for Defendant because Fetter is also a necessary witness to Plaintiff and none of the listed exceptions to MRPC 3.7(a) apply." (Mot. to Disqualify at 13.)

Rule 3.7 (a) is inapplicable. It provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
>
> (1) the testimony relates to an uncontested issue;

> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Fetter is not involved in the defense of the Union. He is not and will not be trial counsel. Thus, this rule does not support disqualification of Miller Cohen.

## III. CONCLUSION

Accordingly, Plaintiff's Motion for Protective Order to preclude Miller Cohen from taking Plaintiff's deposition and Plaintiff's Motion to Disqualify Miller Cohen as counsel for Defendant are **DENIED**.

**IT IS SO ORDERED**.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen days from the date of receipt of a copy of this order to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES MAGISTRATE JUDGE

Dated: February 18, 2014

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 18, 2014.

s/Jane Johnson
Deputy Clerk